JOHN CLAY & OTHERS *v.* THE CARLISLE & JACKSTOWN TURN-
PIKE R. COMPANY.

**Counties—Subscription to Capital Stock in Turnpike Company.**

By an act of the General Assembly, the judge of Nicholas county was
empowered to make subscription to the capital stock of turnpike com-
panies, "provided that such subscription shall not be made until said
court shall be satisfied that an amount of capital stock sufficient to com-
plete each mile of road to which such county subscription applies has been
taken by private subscription. Held, That the language of the statute
is clear, explicit and non-mistakable. It is an indispensable prerequisite
that the court shall be satisfied, that the amount of stock sufficient with
the aid of the county subscription to complete each mile to which such
county subscription applies, has been taken by private subscription, before
such subscription is valid.

APPEAL FROM NICHOLAS CIRCUIT COURT.

January 29, 1872.

OPINION OF THE COURT BY JUDGE LINDSAY:

By an act of the General Assembly, approved February 9th,
1864, as amended February 9th, 1866, the presiding judge of
Nicholas county was empowered to make subscriptin to the cap-
ital stock of any turnpike road company, incorporated in and for
said county, not exceeding the sum of one thousand dollars, for
each mile of such roads, located within its limits; "provided that
such subscriptions shall not be made until said court shall be
satisfied that an amount of stock sufficient, with the aid of such
county subscription, to complete each mile of road to which such
county subscriptions apply, has been taken by private subscrip-
tions." In the case of Clay & Others vs. Nicholas County Court,
&c., 4 Bush, 154, it was held that unless it was made to appear
to the satisfaction of the county court that private subscriptions
to an amount sufficient with the county subscriptions to complete
each mile of road to which the same applied had been taken, said
court had no power to subscribe for stock to any amount, and that
a subscription made before such condition precedent had been
complied with was unauthorized and void.

From the petition filed in the Nicholas county court by the Carlisle & Jackstown Turnpike Road Company (upper route), asking a subscription by said county to the capital stock of said company to the amount of three thousand dollars, it appears that this road is something over six miles in length, and that a little over three miles thereof have already been expended in the completion of the same, and that the company is indebted in about the amount asked to be subscribed by said county, and they ask said subscription to enable them to pay off this indebtedness.

The appellants, Clay & Others, citizens and tax payers of Nicholas county, upon their own motion and without objection, were made parties to the proceeding in the county court. They resisted the application for the subscription, but their objections were disregarded, and the subscription for stock made, as asked for. The order of the court stating in its face, that the county court subscribed for the county of Nicholas one thousand dollars for each mile of the three miles of the road already completed.

From this order an appeal was prosecuted to the circuit court, and that tribunal having affirmed the action of the county court, the proceeding is now before us upon an appeal from this last decision. It is not pretended that the three thousand dollars subscribed by the county, will complete the entire road, nor indeed that it will enable the company to do more than pay off the indebtedness incurred in constructing the three miles already completed, and the company in their petition clearly indicate their intention to apply the amount asked to be subscribed to the payment of the same, in order, as they say, to restore public confidence and induce further subscriptions by private individuals. It is insisted, with earnestness and with some degree of plausibility, that the two acts of the General Assembly, under which the county court claims to have acted, do not authorize and were not intended to authorize county subscriptions for stock in any company that had not already secured an amount by private subscriptions, which, with the aid given by the county, would assure the completion of each and every mile of road located within its limits. We are of opinion that in disposing of this appeal, we need not decide this question, as the subscription by the county court was unauthorized for other, and, we think, all sufficient reasons. The Legislature certainly did not authorize the county of Nicholas to become a stockholder in the various turnpike road companies within its limits on account of the intrinsic value of the stock, not because it was

believed, or hoped, that such investments would be profitable to the county in a financial point of view. Nor could it have been contemplated that the people of said county were to be taxed in order to enable turnpike companies to pay off indebtedness incurred in the construction of roads already completed. It must be apparent to every one that the end sought to be attained by these enactments, was to secure the construction of additional miles of such road in order that the convenience of the people might be subserved, and the general prosperity of the county advanced. The subscription complained of is neither calculated nor expected to accomplish either of these objects.

By its own terms, it is confined to three miles of road already constructed, and when it shall have been paid to the company and devoted to the payment of its debts, there will not have been a single additional mile of turnpike road constructed in Nicholas county.

Whether or not the payment of these debts will have the effect of encouraging additional subscriptions by private individuals, must, of necessity, be a matter of mere conjecture or speculation. But if it would do so, beyond even a rational doubt, it could not authorize the subscription. The language of the statute is clear, explicit and non-mistakable. It is an indispensable prerequisite that the court shall be satisfied that an amount of stock, sufficient, with the aid of the county subscription, *"to complete each mile to which such county subscriptions apply,"* has been taken by private subscriptions.

Accepting the language of the order of the county court as indicating its intention to apply its subscription to the three miles of road already completed, and it is unauthorized, because it does not come within either the spirit or letter of the legislative enactments, or it does not secure, nor even have a direct and certain tendency to secure the construction of these additional miles of road. Upon the other hand, if it be admitted that the company will not be bound by this limitation, but will have the right to apply the county subscription to the completion of their road, then the action of the county court was not authorized.

The record not only fails to show that there are unexpended private subscriptions, sufficient with the aid to be given by the county, to complete three additional miles of road, but exhibits the fact that such subscriptions have been exhausted, and the company still largely indebted.

It is not necessary that we should express an opinion as to whether or not the good faith of the tax-payers of Nicholas county requires a subscription to the company of an amount sufficient to pay the debts due to contractors who worked upon the faith of the original subscription. They are not legally bound to pay these debts, and without further legislation, the county court can not compel them to discharge a purely moral obligation. This is not an effort to cure a defective subscription of stock. The first subscription was absolutely void, not merely defective. The money collected from the tax-payers under the void subscription still belongs to them. They have the right to compel the sheriff to refund it. The county court has no claim upon it, and no right to control it. Hence, this is not a proceeding to compel the sheriff to pay over money held by him for the benefit of Nicholas county. These conclusions make it not necessary to decide the other questions presented.

The judgment of the circuit court is reversed, and the cause remanded with directions to that court, to reverse the judgment of the county court, and for such other proper proceedings as may be necessary.

*Andrews & Ross, Craddock & T., for appellants.*
*Phister, for appellees.*